GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
Email: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Plaintiff,*
*Chapter 11 Trustee Michael Carmel*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | CASE NO. BK-21-14978-ABL |
| SILVER STATE BROADCASTING, LLC, | Chapter 11 |
| ☐ AFFECTS THIS DEBTOR | *Jointly Administered with:* |
| ☐ AFFECTS GOLDEN STATE BROADCASTING, LLC | Golden State Broadcasting, LLC Case No. 21-14979-ABL |
| ☐ AFFECTS MAJOR MARKET RADIO, LLC | Major Market Radio, LLC Case No. 21-14980-ABL |
| ☒ AFFECTS ALL DEBTORS | |
| Chapter 11 Trustee Michael Carmel, | Adversary Proc. No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR RECOVERY OF FRAUDULENT TRANSFERS, CONVERSION, BREACH OF FIDUCIARY DUTY, AND TURNOVER OF PROPERTY OF THE ESTATES** |
| Edward R. Stolz, II; Royce International Broadcasting Corporation; R.I.B.C. a/k/a RIBC, Inc.; Edward R. Stolz, II Trustee of the Edward R. Stolz and Irene M. Stolz Revocable Trust; Edward R. Stolz, II, Successor Trustee of The Dominic Rose Trust, Dated April 27, 2005; Deborah Jeannette McKay a/k/a Deborah Jeannette Naiman a/k/a Deborah McKay Naiman a/k/a Debby McKay a/k/a Debby Naiman a/k/a Debby McKay Naiman a/k/a Debby Naiman McKay, | |
| Defendants. | |

Michael Carmel, in his capacity as the Chapter 11 trustee ("Trustee") of the bankruptcy estates of Silver State Broadcasting, LLC, Golden State Broadcasting, LLC, and Major Market Radio, LLC ("Plaintiff") hereby files this complaint ("Complaint")[1] against defendants Edward R. Stolz, II; Royce International Broadcasting Corporation; R.I.B.C. a/k/a RIBC, Inc.; Edward R. Stolz, II, Trustee of the Edward R. Stolz and Irene M. Stolz Revocable Trust; Edward R. Stolz, II, Successor Trustee of The Dominic Rose Trust, Dated April 27, 2005; and Deborah Jeannette McKay a/k/a Deborah Jeannette Naiman a/k/a Deborah McKay Naiman a/k/a Debby McKay a/k/a Debby Naiman a/k/a Debby McKay Naiman a/k/a Debby Naiman McKay (altogether, the "Defendants"), and alleges as follows:

### I. PARTIES

1. Plaintiff is the duly appointed Chapter 11 trustee over the bankruptcy estates (collectively, the "Estates") of debtors Silver State Broadcasting, LLC ("Silver State"); Golden State Broadcasting, LLC ("Golden State"); and Major Market Radio, LLC ("Major Market", and together with Silver State and Golden State, the "Debtors").

2. On October 19, 2021 (the "Petition Date"), *Silver State Broadcasting, LLC* (Case No. 21-14978-abl); *Golden State Broadcasting, LLC Case No. 21-14979-ABL* (Case No. 21-14979-abl); and *Major Market Radio, LLC* (21-14980-abl) each filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases in the United States Bankruptcy Court for the District of Nevada (collectively, the "Chapter 11 Cases").

3. The Debtors are Nevada limited liability companies.

4. Defendant EDWARD R. STOLZ, II ("Stolz") is the co-manager of the Debtors and served as the designated representative of the Debtors in the Chapter 11 Cases prior to the Trustee's appointment.

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; all references to "Civil Rule" shall refer to the Federal Rules of Civil Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. Bankruptcy Court for the District of Nevada.

5. Since at least 2010, Silver State, acting under the direction and control of Stolz, has operated three radio stations in Nevada, having call signs KFRH(FM), North Las Vegas, Nevada (FCC Facility ID No. 19062); KBET(AM), Winchester, Nevada (FCC Facility ID No. 136292); and K276GX, Las Vegas, Nevada (FCC Facility ID No. 203222). On or about November 10, 2010, Stolz also signed a lease agreement on behalf of Silver State as its President and CEO to occupy premises commonly known as 6725 Via Austi Parkway in Las Vegas, Nevada, 89119 ("Via Austi Lease"). Stolz's contacts with the State of Nevada have been systematic and continuous since at least 2010.

6. Defendant ROYCE INTERNATIONAL BROADCASTING CORPORATION ("Royce") is a Nevada corporation and the sole member of each of the Debtors.

7. Stolz is the President and sole shareholder of Royce. Royce unconditionally and irrevocably guaranteed the Via Austi Lease in a writing signed by Stolz as President and CEO of Royce. Royce's contacts with the State of Nevada have been systematic and continuous since at least 2010.

8. Stolz's sworn testimony is that has owned and operated radio stations in California and Nevada for over 40 years.

9. Defendant R.I.B.C. a/k/a RIBC, INC. ("RIBC") is a California corporation. Upon information and belief, Stolz is the President of RIBC. Although Royce and RIBC have different taxpayer identification numbers (EINs), at times Stolz caused Royce and/or RIBC to use one another's EINs interchangeably. Upon information and belief, after executing the Via Austi Lease, Royce and RIBC, acting at the direction and under the control of Stolz, conducted business at and/or from the premises subject of the Via Austi Lease continuously through at least the Petition Date. RIBC's contacts with the State of Nevada have been systematic and continuous.

10. Defendant EDWARD R. STOLZ, II, TRUSTEE OF THE EDWARD R. STOLZ AND IRENE M. STOLZ REVOCABLE TRUST ("Parents Trust") is a revocable trust of which Stolz is both the trustee and the beneficiary.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

11. Defendant EDWARD R. STOLZ, II, AS SUCCESSOR TRUSTEE OF THE DOMINIC ROSE TRUST, DATED APRIL 27, 2005 ("Dominic Trust") is a revocable trust of which Stolz is both the trustee and the beneficiary.

12. Defendant DEBORAH JEANNETTE MCKAY a/k/a DEBORAH MCKAY NAIMAN a/k/a DEBORAH JEANNETTE NAIMAN a/k/a DEBBY MCKAY a/k/a DEBBY NAIMAN a/k/a DEBBY MCKAY NAIMAN a/k/a DEBBY NAIMAN MCKAY (collectively, "Naiman") is a co-manager of the Debtors.

13. Naiman resides in Sacramento, California.

14. Filings with the Nevada Secretary of State identify Naiman as a co-manager of the Debtors and Secretary and Director of Royce. Naiman's contacts with the State of Nevada have been systematic and continuous since approximately 2010. For example, Naiman was heavily involved in the pre-bankruptcy operations of the seven radio stations that are owned by the Debtors, including selling advertising for 104.3 KFRH(FM) and handling pre-petition bookkeeping for the Debtors. Naiman has also had dominion and control of the Debtors' books and records and assisted in preparing the Debtors' post-petition monthly operating reports prior to the Trustee's appointment.

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the order of reference set forth in Local Rule 1001(b)(1).

16. Jurisdiction exists over this adversary proceeding under 28 U.S.C. §§ 157 and 1334(b).

17. This adversary proceeding raises claims that are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O).

18. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because the Chapter 11 Cases were filed in this District and are pending before this Court.

19. Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

### III. GENERAL ALLEGATIONS

20. Each of the Debtors' bankruptcy petitions (collectively, the "Petitions") identify, under penalty of perjury, the respective Debtors' principal place of business as 6725 Via Austi Parkway in Las Vegas, Nevada 89119, Clark County.

21. Stolz signed the Debtors' bankruptcy Petitions commencing the Chapter 11 Cases under penalty of perjury.

22. Each of the Debtors' bankruptcy petitions also aver under penalty of perjury that "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district."

23. The Debtors' initial Lists of Equity Security Holders identify Stolz as the one hundred percent (100%) equity holder in each of the Debtors.

24. Ultimately, the Debtors amended their Lists of Equity Security Holders to state, under penalty of perjury, that Royce is the one hundred percent (100%) equity holder in each of the Debtors.

25. On March 6, 2023, this Court entered its Order directing the appointment of a Chapter 11 trustee for the Debtors' estates and on March 10, 2023, the Trustee was appointed as the Chapter 11 trustee for Debtors' Estates.

26. On March 13, 2023, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee*, accepting his appointment as the Chapter 11 Trustee for the Debtors' Estates.

27. The Debtors operate the following radio stations (the "Radio Stations"):

- Golden State: KREV(FM), Alameda, California (FCC Facility ID No. 36029).
- Silver State: KFRH(FM), North Las Vegas, Nevada (FCC Facility ID No. 19062); KBET(AM), Winchester, Nevada (FCC Facility ID No. 136292); and K276GX, Las Vegas, Nevada (FCC Facility ID No. 203222).

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

- Major Market: KRCK-FM, Mecca, California (FCC Facility ID No. 52808); K251BX, Palm Desert, California (FCC Facility ID No. 150925); and K238AK, Palm Desert, California (FCC Facility ID No. 147714).

28. The Debtors' Radio Stations principally generate revenue through advertising/programming, by which the Debtors first utilized the Radio Stations' ratings to garner interest from potential customers including advertising agencies, who then, once interested, would send "buys" to the Radio Stations; upon receipt of the "buys" the Radio Stations either constructed their own advertising for that customer and then broadcast it on the respective station(s), or broadcast advertising that was constructed by the customer or a third party.

29. Upon information and belief based on filings made in the Chapter 11 Cases at the direction of Stolz, prior to the appointment of W. Lawrence Patrick as a receiver over certain of the Radio Stations in July 2020, Debtors' Radio Stations generated approximately $80,000.00 per month in revenue (or nearly $1 million per year), although certain years were better than others depending on economic and market conditions.

30. Despite this revenue, since at least 2012, Golden State and Silver State have not been paying their debts as they come due, including, without limitation: (i) license fees dating back to 2012 due to the American Society of Composers, Authors, and Publishers from Golden State and Silver State; (ii) the judgment entered on July 22, 2014, against Golden State, among others, for $111,426.06 in favor of Bellaire Tower Homeowners Association, who has asserted a proof of claim in Golden State's Chapter 11 Case for $411,464.82; (iii) the judgment entered against Golden State and Silver State, among others, for more than $1.2 million entered in favor of WB Music Corp., et al. on August 6, 2018, in case number 5:16-cv-00600-JBG-DTB in the United States District Court, Central District of California, which was not paid until July 2021; (iv) missed payments due from Golden State to C&E Haas Development Company, LLC dating back to 2014, who now has an allowed general unsecured claim in Golden State's Chapter 11 Case for $219,999.52; and (v) missed payments due from Silver State to Crown Castle MU LLC

dating back to at least approximately May 14, 2015, who has asserted a proof of claim in Silver State's Chapter 11 Case for $1,227,872.98.

31. The additional proofs of claims filed in the Chapter 11 Cases further exemplify that the Debtors have not been paying their debts as they come due for more than four years preceding the Petition Date.

32. At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against each of the Debtors (the "Predicate Creditors"), including the following:

| Creditor | Debtor | Proof of Claim No. & Amount | Date Claim Arose |
|---|---|---|---|
| Mincin Law PLLC | Silver State | 1-1 ($37,644.73) | 9/24/2019 |
| W. Lawrence Patrick | Silver State, Golden State & Major Market | 5-2 ($1,248,348.09) | Appointed 7/6/2020; First Fee Order 8/26/2021 |
| Crown Castle MU LCC | Silver State | 6-1 ($1,227,872.98) | Beginning 5/14/2015 |
| C&E Haas Development Company | Golden State | 10 ($219,999.52) | Beginning 12/2014 |
| Naylor & Braster Attorneys at Law PLLC | Silver State | 7-1 ($18,304.20) | 12/6/2018 – 3/15/2019 |

33. Instead of paying the Debtors' creditors, a significant portion of the Debtors' revenue and other payments due to the Debtors was diverted away from the Debtors to Stolz, Royce, RIBC, the Parents Trust, and the Dominic Trust (the "Diverted Revenue Defendants").

34. After litigation was commenced against Golden State and Silver State and judgments had been entered, Stolz caused new bank accounts to be open for several of the Diverted Revenue Defendants.

35. At the direction of and under the control of Stolz, hundreds of thousands of dollars due to the Debtors in connection with the Radio Stations' operations was paid directly to

the Diverted Revenue Defendants and deposited in their respective bank accounts instead of in the Debtors' accounts.

36. In the four years preceding the Petition Date, Stolz caused Royce to divert away from the Debtors and into Royce bank account(s) no less than $160,288.95 in revenue generated by the Debtors' Radio Stations' operations or funds otherwise due to the Debtors, including without limitation the transfers identified on Exhibit 1 (the "Revenue Diverted to Royce").

37. At all relevant times, Stolz controlled Royce and owned and/or held the controlling beneficial interest in Royce, and Stolz was a subsequent transferee of Royce.

38. In the four years preceding the Petition Date, Stolz caused RIBC to divert away from the Debtors and into RIBC bank account(s) no less than $199,633.20 in revenue generated by the Debtors' Radio Stations' operations or funds otherwise due to the Debtors, including without limitation the transfers identified on Exhibit 2 (the "Revenue Diverted to RIBC").

39. At all relevant times, Stolz controlled RIBC and owned and/or held the controlling beneficial interest in RIBC, and Stolz was a subsequent transferee of RIBC.

40. In the four years preceding the Petition Date, Stolz, as trustee of the Parents Trust, diverted away from the Debtors and into Parents Trust bank account(s) no less than $65,796.22 in revenue generated by the Debtors' Radio Stations' operations or funds otherwise due to the Debtors, including without limitation the transfers identified on Exhibit 3 (the "Revenue Diverted to Parents Trust").

41. Upon information and belief, since at least 2006, Stolz has been the trustee of the Parents Trust as well as a beneficiary of the Parents Trust. Stolz is a subsequent transferee of the Parents Trust.

42. In the four years preceding the Petition Date, Stolz, as trustee of the Dominic Trust, diverted away from the Debtors and into the Dominic Trust's bank account(s) no less than $194,097.06 in revenue generated by the Debtors' Radio Stations' operations or funds otherwise due to the Debtors, including without limitation the transfers identified on Exhibit 4 (the "Revenue Diverted to Dominic Trust").

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

43. Upon information and belief, since at least 2006, Stolz has been the trustee of the Dominic Trust as well as a beneficiary of the Dominic Trust. Stolz is a subsequent transferee of the Dominic Trust.

44. During the four years preceding the Petition Date, Silver State and potentially the other Debtors transferred tens of thousands of dollars to Naiman, including without limitation the transfers identified on Exhibit 5 (the "Naiman Transfers").

45. During the four years preceding the Petition Date, Silver State and potentially the other Debtors transferred thousands of dollars to Stolz, including without limitation the transfers identified on Exhibit 6 (the "Stolz Transfers").

## IV. FIRST CLAIM FOR RELIEF

**Avoidance of Fraudulent Transfers – 11 U.S.C. § 548(a)(1)(A)**

**(Stolz; Royce; RIBC; Parents Trust; Dominic Trust)**

46. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

47. The Revenue Diverted to Royce, the Revenue Diverted to RIBC, the Revenue Diverted to Parents Trust, and the Revenue Diverted to Dominic Trust (collectively, the "Diverted Revenue Transfers") are each a transfer of the Debtors' property within the meaning of 11 U.S.C. § 101(54).

48. Multiple badges of fraud are present with respect to the Diverted Revenue Transfers.

49. With respect to the Diverted Revenue Transfers that were made within two years of the Petition Date, the Diverted Revenue Transfers were made to insiders or affiliates of insiders of the Debtors.

50. The Diverted Revenue Transfers made within two years of the Petition Date were made while litigation was pending against Golden State and Silver State and were concealed from Golden State and Silver State's creditors.

51. The Debtors received no value in exchange for the Diverted Revenue Transfers and thus far less than reasonably equivalent value.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

52. The chronology of events and the timing of the Diverted Revenue Transfers where judgments were being entered against the Debtors and litigation was pending against the Debtors reflect the intent to defraud.

53. The Diverted Revenue Transfers made within two years of the Petition Date were made with the actual intent to hinder, delay, and defraud the Debtors' creditors, including those identified above.

54. When the Diverted Revenue Transfers made within two years of the Petition Date were made, the Debtors had incurred and intended to continue to incur debts beyond the Debtors' ability to pay their debts as they came due.

55. Based on the foregoing, the Diverted Revenue Transfers that were made within two years of the Petition Date are avoidable actual fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A).

## V. SECOND CLAIM FOR RELIEF

**Avoidance of Fraudulent Transfers – 11 U.S.C. §§ 544 and NRS 112.180(1)(a)**

**(Against Stolz; Royce; RIBC; Parents Trust; Dominic Trust)**

56. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

57. The Diverted Revenue Transfers are each a transfer of the Debtors' property within the meaning of 11 U.S.C. § 101(54).

58. On the Petition Date and today, the Predicate Creditors held allowable unsecured claims under 11 U.S.C. § 502.

59. The Diverted Revenue Transfers constitute transfers of property of the Debtors or obligations incurred by the Debtors that are voidable by that kind of creditor under 11 U.S.C. § 544.

60. Multiple badges of fraud are present with respect to the Diverted Revenue Transfers.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

61. The Diverted Revenue Transfers were made to insiders or affiliates of insiders of the Debtors.

62. The Diverted Revenue Transfers were made while litigation was pending against Golden State and Silver State and were concealed from Golden State and Silver State's creditors.

63. The Debtors received no value in exchange for the Diverted Revenue Transfers and therefore far less than reasonably equivalent value.

64. The chronology of events and the timing of the Diverted Revenue Transfers where judgments were being entered against the Debtors and litigation was pending against the Debtors reflect the intent to defraud.

65. The Diverted Revenue Transfers were made with the actual intent to hinder, delay, and defraud the Debtors' creditors, including those identified above.

66. When the Diverted Revenue Transfers were made, as described above, the Debtors had incurred and intended to continue to incur debts beyond the Debtors' ability to pay their debts as they came due rendering Debtors presumptively insolvent pursuant to NRS 112.160.

67. The Diverted Revenue Transfers were made within four years of the Petition Date.

68. Under applicable Nevada law, including NRS 112.180(1)(a), the Diverted Revenue Transfers constitute the transfer of interests of the Debtors in property or an obligation incurred by the Debtors during the relevant statutory period, that the Debtors made with actual intent to hinder, delay, or defraud creditors of the Debtors.

69. Based on the foregoing, the Diverted Revenue Transfers are avoidable pursuant to 11 U.S.C. § 544 and NRS 112.180(1)(a).

. . .

. . .

. . .

. . .

## VI. THIRD CLAIM FOR RELIEF

**Avoidance of Fraudulent Transfers – 11 U.S.C. § 544 and NRS 112.180(1)(b)**

**(Against All Defendants)**

70. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

71. The Diverted Revenue Transfers, the Stolz Transfers, and the Naiman Transfers (collectively, the "Constructive Fraudulent Transfers") are each a transfer of the Debtors' property within the meaning of 11 U.S.C. § 101(54).

72. On the Petition Date and today, the Predicate Creditors held allowable unsecured claims under 11 U.S.C. § 502.

73. The Constructive Fraudulent Transfers constitute transfers of property of the Debtors or obligations incurred by the Debtors that are voidable by that kind of creditor under 11 U.S.C. § 544.

74. The Constructive Fraudulent Transfers were made to insiders or affiliates of insiders of the Debtors.

75. The Debtors received no value in exchange for the Constructive Fraudulent Transfers and therefore far less than reasonably equivalent value.

76. When the Constructive Fraudulent Transfers were made, as described above, the Debtors had incurred and intended to continue to incur debts beyond the Debtors' ability to pay their debts as they came due, rendering Debtors presumptively insolvent pursuant to NRS 112.160.

77. The Constructive Fraudulent Transfers were made within four years of the Petition Date.

78. Under applicable Nevada law, including NRS 112.180(1)(b), the Constructive Fraudulent Transfers constitute the transfer of interests of the Debtors in property or an obligation incurred by the Debtors during the relevant statutory period, and the Debtors made

the Constructive Fraudulent Transfers without receiving reasonably equivalent value in exchange for the transfers.

79. Based on the foregoing, the Constructive Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 544 and NRS 112.180(1)(b).

## VII.  FOURTH CLAIM FOR RELIEF

### Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550

### (Against All Defendants)

80. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

81. Defendants were the initial transferees, immediate transferees, or mediate transferees of the Diverted Revenue Transfers, the Stolz Transfers, and the Naiman Transfers. (together, the "Avoided Transfers") or were the person or entity for whose benefit the transfers were made.

82. To the extent it is determined that one or more of the Defendants is an immediate or mediate transferee of the subject transfers, such Defendant did not take for value and in good faith, nor without knowledge of the voidability of such transfers.

83. Defendants were the persons and entities for whose benefit the Avoided Transfers were made.

84. Based upon the foregoing, Plaintiff is entitled to recover the Avoided Transfers or their value from Defendants pursuant to 11 U.S.C. § 550(a) for the benefit of the Estates.

## VIII.  FIFTH CLAIM FOR RELIEF

### Conversion

### (Against Stolz; Royce; RIBC; Parents Trust; Dominic Trust)

85. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

86. The monies diverted by, between, among, or to the Diverted Revenue Defendants from any of the Debtors were the Debtors' personal property.

87. The Diverted Revenue Defendants wrongfully exerted distinct acts of dominion over the Debtors' personal property, which was in denial of, or inconsistent with, the Debtors' title or rights therein, because the monies converted belonged to the respective Debtors at the time they were converted and diverted to each of the Diverted Revenue Defendants.

88. The Diverted Revenue Defendants' actions were in derogation, exclusion, or defiance of the Debtors' title or rights in the Debtors' own monies.

89. The Diverted Revenue Defendants' actions were intentional and resulted in serious interference with the personal property rights of the Debtors.

90. The Diverted Revenue Defendants exercised dominion and control over Debtors' personal property, namely the Diverted Revenue Transfers, by converting the same for the Diverted Revenue Defendants' own use.

91. The Diverted Revenue Defendants' intentional acts directly and proximately caused the conversion of personal property of the Debtors and the resulting damage to the Debtors.

92. Plaintiff is entitled to a judgment against the Diverted Revenue Defendants in the amount of monies wrongfully diverted by, between, among, or to the Diverted Revenue Defendants from each of the Debtors.

93. As a direct and proximate result of the above-described conduct of the Diverted Revenue Defendants, the Debtors sustained damages in an amount to be determined at trial.

94. The Trustee, on behalf of the Debtors' Estates, is entitled to recover all available remuneration, including damages and restitution, from the Defendants plus accrued and accruing interest, prejudgment interest, costs, and all other relief deemed fair and just.

## IX.  SIXTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (Against Stolz)

95. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

96. Stolz owes and owed a fiduciary duty to each of the Debtors, and has owed each of the Debtors a fiduciary duty since the times of their creation, including without limitation a duty to act with due care, skill, and diligence.

97. As the managing member of Silver State, Golden State, and Major Market, Stolz owes and owed a fiduciary duty to each of the Debtors, including without limitation, the duties of care, loyalty, and good faith.

98. As the manager and sole shareholder of Royce, the sole member of Silver State, Golden State, and Major Market, Stolz owes and owed a fiduciary duty to each of the Debtors, including without limitation, the duties of care, loyalty, and good faith.

99. Stolz breached his fiduciary duties owed to the Debtors by transferring or otherwise permitting the transfer of Debtors' monies to non-debtor recipients including Royce, RIBC, the Parents Trust, the Dominic Trust, Naiman, and himself for no value and with the intent to personally benefit from such funds to the detriment of the Debtors and their creditors.

100. Stolz breached his fiduciary duties owed to the Debtors by diverting Debtor monies to non-debtor recipients including Royce, RIBC, the Parents Trust, the Dominic Trust, Naiman, and himself instead of paying outstanding debt obligations of the Debtors.

101. Among Stolz's breaches of fiduciary duties include his actions in overseeing, directing, and/or authorizing the Diverted Revenue Transfers to the Diverted Revenue Defendants and the Naiman Transfers to Naiman and the Stolz Transfers to Stolz.

102. Stolz's breaches proximately caused the Debtors damages in the form of loss of funds and stolen revenue.

103. As a direct and proximate result of the above-described conduct of Stolz, Debtors sustained damages in an amount to be determined at trial.

104. The Trustee, on behalf of the Estates, is entitled to recover all available remuneration, including damages and restitution, from Stolz plus accrued and accruing interest, prejudgment interest, costs, and all other relief deemed fair and just.

. . .

. . .

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

# SEVENTH CLAIM FOR RELIEF

**Turnover of Diverted Revenue Transfers Pursuant to 11 U.C.S. § 542**

**(Against Stolz; Royce; RIBC; Parents Trust; Dominic Trust)**

105. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

106. This claim is pled in the alternative.

107. To the extent that the Diverted Revenue Transfers are not found to be fraudulent transfers as alleged in Claims One though Four above, the Diverted Revenue Transfers are property of the estate pursuant to 11 U.S.C. § 541.

108. The Diverted Revenue Defendants are in possession of the Diverted Revenue Transfers.

109. The Diverted Revenue Transfers are of substantial value and will benefit the Estates.

110. The Trustee can use the Diverted Revenue to pay claims against the Estates.

111. Defendants are obligated to return the Diverted Revenue Transfers to Plaintiff pursuant to 11 U.S.C. § 542(a).

## **RESERVATION OF RIGHTS**

This Complaint is intended to seek recovery of all transfers avoidable under Chapter 5 of Title 11 not specifically identified in the Complaint, including, without limitation, any payments received during the applicable preference period or applicable fraudulent transfer limitation period. Plaintiff reserves the right to amend this Complaint if additional avoidable transfers are revealed during discovery, including, but not limited to, any claims arising under Chapter 5 of Title 11 of the United States Code.

## **PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Find that the Diverted Revenue Transfers, the Stolz Transfers, and the Naiman Transfers are avoidable under 11 U.S.C. §§ 544 and/or 548;

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

2. Find that Plaintiff is entitled to recover the Avoided Transfers or their value pursuant to 11 U.S.C. § 550 and enter judgment against the Defendants and in favor of Plaintiff in an amount equal to the Avoided Transfers, plus all interest, costs, and attorneys' fees as may be allowed by law;

3. In the alternative, order the Diverted Revenue Defendants to return the Diverted Revenue Transfers to Plaintiff;

4. Enter a money judgment in favor of Plaintiff and against the Diverted Revenue Defendants for all damages resulting from their conversion of Debtors' property, plus interest as allowed at law;

5. Enter a money judgment in favor of Plaintiff and against Stolz for all damages resulting from Stolz's breaches of his fiduciary duties, plus interest as allowed at law;

6. Grant reasonable attorney's fees and costs; and

7. For such further relief the Court finds just and proper.

Dated this 19th day of October, 2023.

                                GARMAN TURNER GORDON LLP

                                By: */s/ Gregory E. Garman*
                                   GREGORY E. GARMAN, ESQ.
                                   TALITHA GRAY KOZLOWSKI, ESQ.
                                   MARY LANGSNER, Ph.D.
                                   7251 Amigo Street, Suite 210
                                   Las Vegas, Nevada 89119
                                   *Attorneys for Plaintiff, Chapter 11 Trustee Michael Carmel*